J-S71033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.M.W.-D., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 877 EDA 2016 |

Appeal from the Order Entered February 17, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000653-2015, CP-51-DP-0001592-2013, FID:
51-FN-003132-2013

| | | |
|---|---|---|
| IN RE: S.M.D.-W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 878 EDA 2016 |

Appeal from the Order Entered February 17, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000654-2015, CP-51-DP-0001590-2013, FID:
51-FN-003132-2013

| | | |
|---|---|---|
| IN RE: S.M.W.-D., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: M.W., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 879 EDA 2016 |

Appeal from the Order Entered February 17, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000655-2015, CP-51-DP-0001591-2013, FID:
51-FN-003132-2013

J-S71033-16

BEFORE: BOWES, PANELLA, and FITZGERALD[*], JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED NOVEMBER 18, 2016**

M.W. ("Mother") appeals from the orders granting the petitions filed by the Philadelphia County Department of Human Services ("DHS") to terminate her parental rights to S.M.D., S.M.W., and S.M.W.-D.[1] (collectively, "Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[2] We affirm.

On July 25, 2013, DHS received a general protective services ("GPS") report alleging that Mother physically abused Children and was abusing prescription drugs. On July 26, 2013, DHS interviewed Children, who confirmed that Mother physically abused them. That same day, DHS obtained an order of protective custody ("OPC") for Children and placed Children in the care and custody of their paternal grandmother ("PGM"). A shelter care hearing was held on July 29, 2013. At that hearing, the Master lifted the OPC and ordered Children into the temporary care and custody of DHS. On August 7, 2013, Children were adjudicated dependent and returned to PGM's care.

---

[*] Former Justice specially assigned to the Superior Court.

[1] The children were born in May of 2006, February of 2009, and December of 2009, respectively.

[2] In a decree entered on April 27, 2016, the trial court terminated the parental rights of Children's purported father, J.J.J.D. ("Father"). Father has not filed an appeal, nor is he a party to the present appeal.

- 2 -

On September 22, 2015, DHS filed petitions for involuntary termination of Mother's parental rights to Children under Section 2511(a)(1), (2), (5), (8), and (b). On February 17, 2016, the trial court held a hearing on the petitions and entered the orders terminating Mother's parental right to Children that same day.

Mother timely filed these appeals with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a responsive opinion. On April 13, 2016, this Court consolidated the appeals.

Mother raises the following questions for this Court's review:

> 1. Whether the trial court committed reversible error when it involuntarily terminated [M]other's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.[ ] § 2511 [(a)(1), (2), (5), and (8)] as [M]other made progress towards working and meeting her [Family Service Plan ("FSP")] goals, namely staying drug free, working towards obtaining housing, and working on parenting skills, and other goals, during [C]hildren's placement?
>
> 2. Whether the trial court committed reversible error when it involuntarily terminated [M]other's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical, and emotional needs of [Children], as required by the Adoption Act, 23 Pa.C.S.[ ] §2511 (b)?

Mother's Brief at 4.

Mother first claims that the trial court erred in terminating her parental rights when she made efforts and successfully completed many of her objectives for reunification. *Id.* at 7. She contends that she showed a

continuing interest in Children and bonded with them. *Id.* She notes that she successfully completed the Achieving Reunification Center ("ARC") program, drug and alcohol treatment, and mental health treatment. *Id.* Mother also asserts that she has demonstrated her commitment to obtaining appropriate housing through maintaining employment, but her income has hindered her ability to obtain housing. *Id.* at 8. She argues the trial court erred in terminating her parental rights based on economic factors, which DHS failed to prove could not be remedied. *Id.* No relief is due.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005) (citation omitted). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re S.H.*, 879 A.2d at 806. The clear and convincing standard requires evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003). "However, if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

The initial focus is on the conduct of the parent. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). This Court need only agree with the trial court's decision as to any one subsection of Section 2511(a) to affirm the court's decision. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Sections 2511(a)(2) provides, in relevant part:

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>                *      *      *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

- 5 -

J-S71033-16

23 Pa.C.S. § 2511(a)(2).

This Court has stated:

> In order to terminate parental rights pursuant to 23 Pa.C.S.[ ] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted). Parental duty requires that the parent act affirmatively with a good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. *In re E.M.*, 908 A.2d 297, 306 (Pa. Super. 2006).

A court may reject a parent's vow to cooperate after a long period of uncooperativeness as untimely or disingenuous. *In re A.L.D.*, 797 A.2d at 340. Moreover, "[a] child's life simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Adoption of M.E.P.*, 825 A.2d at 1276 (citations

- 6 -

omitted). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted).

Instantly, the trial court found termination was warranted under Section 2511(a)(2) for the following reasons:

> [C]hildren . . . have been in placement care for approximately thirty months.
>
> *   *   *
>
> [T]he [Community Umbrella Agency ("CUA")] social worker testified that [C]hildren were placed into the care and custody of DHS due to several issues with [M]other. [M]other did not have appropriate housing. Furthermore, [M]other lacked the appropriate parenting skills and used inappropriate discipline with [C]hildren. [M]other did not rectify any of these issues. The social worker testified that [M]other's visits with [C]hildren were chaotic. Moreover, [M]other had a hard time interacting with [C]hildren during visits. The testimony indicated that [M]other "does not have the skills" to control [C]hildren. Furthermore, [C]hildren continued to be fearful to be alone with [M]other. Lastly, [M]other's visits with [C]hildren were always supervised. [Mother] never progressed to unsupervised visits.

Trial Ct. Op., 5/20/16, at 4 (unpaginated) (record citations omitted).

Our review of the record reveals the following. Heather Miller, the CUA case management supervisor, testified she has been the supervisor assigned to Mother and Children since April of 2015. N.T., 2/17/16, at 17. Miller stated that Mother's objectives were to obtain appropriate housing, to attend

mental health treatment, to attend drug and alcohol treatment, to participate in ARC services, to participate in domestic violence counseling, and to maintain visits with Children. *Id***.** at 18. Miller testified that Mother completed her drug and alcohol treatment, mental health treatment, ARC programs, and obtained employment. However, Mother did not have appropriate housing. *Id.* Additionally, Mother did not complete a court-ordered parenting capacity evaluation. *Id.*

Zoe Taddie, a CUA social work intern, testified that Mother's visits with Children were "pretty chaotic." *Id.* at 31. Taddie expressed her concerns about Mother's ability to handle all three Children at once. *Id.* at 31-32. Taddie testified that she had to ask Mother to get up and show Children she has authority over them because Mother often sits on the couch and ignores Children when they are acting out. *Id.* at 38. Mother also missed seven of the last twenty scheduled visits with Children. *Id.* at 31.

Thus, the trial court's findings of fact are supported by competent evidence in the record. *See In re M.G.*, 855 A.2d at 73-74. Mother's argument that the court terminated her rights based solely on economic factors lacks merit. Rather, Mother essentially asks this Court to reweigh the evidence considered by the trial court. Although Mother has made some progress over approximately thirty months, Children's lives cannot be put on hold until she summons the ability to handle the responsibilities of parenting. *See In re Adoption of M.E.P.*, 825 A.2d at 1276. Accordingly,

we discern no basis to disturb the trial court's finding or its conclusion that Mother's conduct met the elements of Section 2511(a)(2).[3]

Mother next argues that the trial court failed to give "primary consideration to the developmental, physical and emotional needs and welfare of the child" or consider the bonds between her and Children. Mother's Brief at 9-10. Mother contends that "the record reflects that [she] willingly made efforts to comply with DHS and CUA objectives in attempts to make herself a better parent and reunify with her children because [she] loves her children and has a bond with them." *Id.* at 10-11. According to Mother, "a bond or lack thereof was never proven by clear and convincing evidence." *Id.* at 10. No relief is due.

Section 2511(b) provides:

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. . . .

23 Pa.C.S. § 2511(b).

The focus in terminating parental rights under Section 2511(b) is on the children. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super.

---

[3] Because, we affirm the court's decision based on Section 2511(a)(2), we need not address Mother's arguments regarding the remaining subsections of Section 2511(a). *See In re B.L.W., supra*.

2008) (*en banc*). Pursuant to Section 2511(b), the trial court must consider whether termination of parental rights would best serve the developmental, physical, and emotional needs of the child. *See In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *See id.*

With regard to Children's bond with Mother, the trial court found:

> [C]hildren do not share a primary bond with [M]other. [C]hildren's primary parent bond is with the kinship parent, [PGM]. PGM is the primary care giver. She takes care of the medical and educational needs of [C]hildren. [C]hildren have stated that they want to live with PGM. Furthermore, [C]hildren would not suffer emotional damage if the parental rights of [M]other were terminated. Lastly, it would be in the best interest of [C]hildren if their goal were changed to adoption.

Trial Ct. Op., at 5 (unpaginated) (record citations omitted).

Instantly, Mother testified that "every time I leave the visit[,]" the two younger children say they want to go with "mommy." N.T. at 64. However, Miller testified that Children are fearful of being alone with Mother and S.M.D., in particular, requested on several occasions not to participate in visits because of his fear. *Id.* at 19. Dwyone Sanders, a CUA case manager, testified that Children stated they want to live with PGM and see PGM as their primary caregiver. *Id.* at 47-48. Sanders concluded that

Children will not suffer any permanent damage if Mother's paternal rights are terminated and that it was in Children's best interest for Mother's parental rights to be terminated. *Id.* at 48. Taddie observed that sometimes the two younger children will "give [Mother] a hug," but at other times, they "won't really do anything" when they first see her at a visit. *Id.* at 41. Taddie also concluded that Children have transitioned well into the home of PGM. *Id.* at 42.

Thus, we find no support for Mother's assertion that the trial court failed to consider the requirements of Section 2511(b). We further conclude competent evidence supports the trial court's determinations that the bonds between Mother and Children, if severed, would not be detrimental to Children and that the termination of Mother's parental rights would best serve the needs and welfare of Children. Therefore, we do not disturb the trial court's conclusions under Section 2511(b). *See In re M.G.*, 855 A.2d at 73-74.

Having reviewed Appellant's arguments, the trial court's findings of facts and conclusions of law, and the record, we affirm the orders terminating Mother's parental rights to Children on the basis of Section 2511(a)(2) and (b).

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2016